Good morning, your honors. May it please the court, my name is John Snyder and I'm appearing on behalf of the appellant in FedEx Ground in this appeal. In this case, Plaintiff John Openshaw signed a contract in which he expressly promised that he would pick up and deliver FedEx packages on his assigned routes. Yet the district court, in the guise of the breach of the implied covenant of good faith and fair dealing, allowed the jury to rewrite that contract and impose upon FedEx a far-reaching obligation to step in and assist Mr. Openshaw whenever he failed in performing his own expressed contractual promises. In a similar vein, the district court allowed the jury to impose a good cause requirement on a non-renewal provision that unambiguously permitted non-renewal for any reason. Let's take the first finding. I'm reading from your brief, page 17, quoting the district court, summarizing some of the evidence of claim that faith and fair dealing. FedEx breached the implied covenant of good faith and fair dealing by hiring one of Mr. Openshaw's drivers very early on without giving him any notice about it, reasonable notice to try to deal with that situation. Now, put aside the evidentiary conflict, which you point out in the footnote, and let's say that there was some evidence that FedEx did indeed hire away one of Mr. Openshaw's drivers. Wouldn't that be an example of a breach of the covenant of good faith and fair dealing? Well, Your Honor, as we said in our brief, the touchstone of the implied covenant is protecting an express right of the One of the express expectations of Mr. Upshaw, Openshaw, is that he'll have drivers for his trucks to pick up your packages. If you hire away one of his drivers, you're preventing him from performing. Is that good faith? Your Honor, I would concede that in certain circumstances, the FedEx ground had taken an active role in hiring away one of Mr. Openshaw's drivers. That could conceivably be a breach of the implied covenant because it is interfering with his express right, which is to pick up and deliver those packages. Does the implied covenant of good faith and fair dealing overcome business and professions code 16600, which prevents agreements and restraint of trade? Again, Your Honor, I guess the reason I'm struggling with the question is these are all hypotheticals that didn't deal with this case. The evidence here is It's not a hypothetical if there was any evidence from which the court could find the hiring away of the driver because then that would defeat your JMOL motion. Well, don't don't really treat as a hypothetical. Okay. Your Honor, I think the important thing to remember the standard under the JMOL. Obviously, the facts are construed in the fate and the light most favorable to the non-movement. However, there also has to be substantial evidence. And in this matter, there was just virtually no evidence. There has to be evidence from which a reasonable trier of fact could infer the fact required. That's correct, Your Honor. It's a non-suit standard. Excuse me? It's a non-suit standard. Right. Right, Your Honor. But in this case, the evidence establishes that FedEx Ground was not involved in the hiring away of that driver. As we said in our footnote, Mr. Bagnera, the contractor that did hire him, said that he had the FedEx had no involvement. But you would concede and I'm trying to get your position. Are you conceding that if there was evidence that he did that FedEx did hire away one of his drivers, that could be a breach of the implied covenant of good faith and fair dealing? Or would an agreement not to hire away the drivers be a violation of a restraint of trade provision under Business and Professions Code 16600? I think we would have to concede that that would be a breach of the implied covenant because it would be interfering with Mr. Openshaw's rights. And it would not be an illegal implied covenant under the restraint of trade provisions? It may be also a violation by FedEx Ground of California business regulations, but as to the claim in this matter, I think we would have to concede that that would be something that did interfere with Mr. Openshaw's rights. Pardon me for interrupting you. No, that's fine. So just so that I understand this, you agree that FedEx, if there was evidence from which a reasonable jury could believe, a reasonable finder of fact could believe that FedEx had hired away Mr. Openshaw's driver, that that would constitute a breach of the implied covenant of good faith and fair dealing. But you say the evidence here is insufficient to provide a basis for that conclusion. Is that what you're saying? Yes, that is correct. And I don't know what the implication would be as to the California business code, whether that would be a proper defense. But the fact of the matter is that here ---- It's mentioned in your brief. That's why I bring it up. Right. No, I understand, Your Honor. So in denying FedEx's grounds rule 15 motion, the district court found that the jury could imply upon FedEx an obligation to assist Mr. Openshaw in the performance of his contractual pickup and delivery obligations. And the district court found that FedEx had breached this implied obligation by, among other things, refusing to flex excess packages, failing to reconfigure his service areas, failing to give him notice and an opportunity to cure, and hiring one of his drivers away without reasonable notice. And your position on the refusal to flex excess packages is that it's a discretionary power expressly provided in the contract that you may flex or you may not. Yes, Your Honor, that's correct. And that ---- As far as a refiguring of the service, reconfigure the service area, you can do that, and there's an express provision in the contract that Openshaw can claim compensation if you do that. That's correct, Your Honor. And our position would be that the ---- with respect to our discretion or our exercise of that discretion, the implied covenant is not relevant because none of those grants of discretion implicate any of Mr. Openshaw's contractual rights under the agreement. He doesn't have an express right under the agreement to have packages flexed away. He doesn't have an express right to have his service areas reconfigured. In fact, the agreement says that that shall be in FedEx grounds sole discretion. There's some language in CARMA, the California court case, that there can be a breach of the covenant even if there's not a breach of a specific provision of the contract. And so if the jury could reasonably find that this behavior, this refusal to help him out was objectively unreasonable or breached something that was obviously in the minds of the parties, under CARMA wouldn't that be sufficient for a breach of the implied covenant? No, it would not, Your Honor, because the critical language in CARMA and the cases that cite it, in CARMA the court said that the implied covenant has a special application in situations where the rights of a party are, the contract grants a discretionary power to one party over the rights of another. And the key in that phrase is over the rights of another. In other words, it has to involve some sort of contractual right that the plaintiff had. It's not a broad compact by which a judge or a jury could be, by fiat, impose some sort of good faith requirement. The jury or the judge cannot say through the breach of the implied covenant that FedEx ground behaved unfairly or unreasonable or in bad faith. Only if that conduct implicates an express right under the agreement will that be found to be a breach of the implied covenant. And in this case, none of the purported grants of discretion to FedEx ground implicate any of the express rights that were granted to Mr. Openshaw and his agreement. Now, if I could move on briefly to the damages issue. In this case, FedEx ground presented an argument that Mr. Openshaw could not recover past the two-year initial term of the agreement. We presented that in several vehicles. There was the jury instruction. There was a motion to eliminate. And finally, the Rule 50 post-trial motion. And we relied principally on the California Court of Appeals case in Martin, which stands for the proposition that a provision that requires notice-only termination limits damages to the notice period. And in this case, we have paragraph 11.2, which sets forth or provides a two-year initial term, but also provides that either party can terminate the agreement or non-renew the agreement with merely 30 days' written notice. But it doesn't have any language about with for any reason or with no reason at all. That's correct, Your Honor. However, a long line of cases, beginning with this Court's decision in Appling and then followed by the Supreme Court's of California's opinion in Doar and the Court of Appeals cases in Bianchi and in Bernard, established that a termination clause that provides that either party can terminate with nothing more than 30 days' notice is not reasonably susceptible to an interpretation that cause is required. In other words, this Court and the California Courts have all uniformly agreed that language that says that either party can terminate only with 30 days' notice, that that empowers that party to terminate for any reason or for no reason. And in this case, Openshaw expressly chose a two-year term. And the operating agreement, like in Martin, says that either side may terminate the agreement with 30 days' notice. Now, the district court. Counsel, I just want to make sure I understand exactly what you're asking us to do. What is it that you want us to do? Your Honor, I think the rule 50 grant would be our principal argument. So you want judgment on everything? On the breach of the implied covenant. Yes, Your Honor. The breach of the contract claim was dismissed without prejudice, and we're not appealing the denial of that rule 50 grant. And the alternative, we believe that the judgment in this case is excessive and should be reduced to either the amount that Mr. Openshaw's own experts said he would have earned in the two-year agreement, which is about $58,000, or in the event that this Court finds that Mr. Openshaw's expert was unreliable, because we also have a third issue, the Daubert motion, then we believe that a new trial would be warranted, because the evidence on lost profits at that point, it would not allow this Court to really determine what the lost profits were. A new trial limited to damages? It would depend on what the result of the rule 50 motion were. Well, if the rule 50 motion were granted, I mean, pardon me, if we reversed on the grounds that the district court should have granted the rule 50 motion, you wouldn't go to damages. If we affirm the district court in its denial of the rule 50 motion, then my question to you is on the motion of a new trial, are you seeking remittitor only? Are you seeking a new trial as to damages, or are you seeking a new trial as to all matters? I think it would be a new trial as to all matters or remittitor, one of the two. And did you seek a new trial as to all matters? Is that part of your rule 59 motion? Our rule 59 motion, I believe, was premised on the damages issue. We sought... At any time, did you ask for a new trial based on the inconsistency in the jury's verdict? We did not. Our sole post-trial motion was the rule 50 for a judgment on all counts or the alternative remitter to 58,000 for. You could have made a motion for a new trial on the grounds that notwithstanding the jury's verdict, the trial court's appreciation of the weight of the evidence should be against the jury's verdict and a new trial should be granted, right? That's a classic motion for a new trial. You didn't make that. So are you abandoning that? And if you're not abandoning it, tell me where in your brief or in your motion before the trial court you asked for it. I think, I guess we are abandoning that request, Your Honor. I think we would either seek, as I said, we would either request a grant of the rule 50 in its entirety or in the alternative the court affirms that ruling, then we want either remitted or 58,400 or a new trial on. On damages. Right. Right. Precisely, Your Honor. Thank you. And I'd like to reserve a minute of my time. You may do so. Good morning, Your Honors. Josh Wolfe for the plaintiff, John Openshaw, who is with me at the council table. Mr. Wolfe, before you get started, could you point to the record as to any evidence from which the district court could find that FedEx hired a driver? I think his name was Ruzan. Ruzan, yes. Away from Openshaw? The trial transcript where Mr. Ruzan testified. Can you give me a citation of that? Yes, I could. It would be easier if I could reserve a minute and come back with that information. All right. But to briefly address it, there was testimony from Mr. Ruzan, the driver, and from Mr. Bagnara, who was temporarily operating the FedEx route that was the pretext for hiring Mr. Ruzan. Not that Bagnara hired him, but that FedEx hired him, or that somehow FedEx put Bagnara up to hiring him as Bagnara was a tool of FedEx. Right. The testimony was not that FedEx hired the driver, but that he was hired to service a FedEx route that was owned by FedEx. But that's not what the good judge Glow said. He said FedEx briefly implied common good, faith, and fair dealing by hiring one of Mr. Openshaw's drivers very early on without giving him any notice. He must have been wrong about that, right? He was right about this part of that statement, which was that the driver was hired by somebody else, but not by FedEx. Right. But the driver was hired on a Friday and didn't show up for work on a Monday, and over the weekend that was when that situation arose. So the circumstance, because it was a FedEx route, the implication was – So he was hired by Bagnara for another FedEx route, but he was not hired by FedEx. Right. You can see that. Correct. Bagnara has an adjacent route, is that right? That's right. Okay, but he's a contractor like Openshaw. Yes. He contracts with FedEx. He doesn't work for FedEx. Well, that's true. But he has his own routes, and then in this instance he was operating – So Openshaw and Bagnara are sort of competitors in an open market for drivers, right? In some sense. In some sense, that's true. If you want to drive a FedEx route in the Valley, you can work for a variety of people, including Bagnara or Openshaw. In that sense, they're competing for drivers. That's true. But FedEx isn't allocating the drivers to one route or another or interfering with the competition between those two. That's right. But what FedEx does have is the ability to provide a list of available drivers, the ability to flex packages if a circumstance such as this one arose where – Available drivers who are employees of FedEx. No. FedEx maintains – the terminal manager testified that she maintains a list of qualified drivers. They're not FedEx employees, but they've been qualified by FedEx to drive these trucks. And from which you could hire if you wish. Exactly. Was he on this list? The list was not provided to my client. That was the testimony. So that was an example of the ability of FedEx to act. It had the right of discretion. And the question that came about – I'm trying to figure out what FedEx did here to interfere with what your client thought was a driver he had hired. FedEx did not provide the opportunity to flex packages on that Monday when the driver didn't show up, when demand exceeded capacity. That's a different problem. That's the flex problem. Yeah. I want to know how they interfered with Openshaw hiring Rouson. I'm not saying that they did. But I am saying – I thought that's what the district court said. I think the district court believed that it was improbable that FedEx didn't know that this transaction was taking place. That's a pretty big leap, isn't it? Well, there's paperwork. FedEx needs to know who the drivers are. Knowing is not – was FedEx supposed to run interference with this? Were they supposed to tell McNair that he couldn't hire Rouson? No, but FedEx operates or oversees the contractors as if they were employees by monitoring, by approving, by regulating. These drivers have to be – you can hire these drivers, but they have to be approved by FedEx. They can be competent drivers, but they have to be tested by FedEx. They have to wear the uniforms of FedEx. They have to punch in and punch out like FedEx would have them do. So FedEx has its hands in every aspect of the operation. And from what we heard at trial, it was inconceivable that FedEx would not know that a driver was moving to another contract because they need to know who's driving that truck for that route. Have we approved that driver? The blue brief states that Mr. Boniara testified that he hired Mr. Rouson, that he didn't notify FedEx ground that he was doing so because it's not FedEx's business. And so was there testimony to the contrary that FedEx was informed? Well, there was testimony that it is FedEx's business because when – But there wasn't anything specific to this particular transaction? That's true. The testimony that was – There was general testimony about FedEx's general principles of oversight, but nothing specific about Mr. Rouson. Is that correct? That's correct. Okay, thanks. Mr. Wolf, could you turn to the question of the California case of Goose and explain to us how the jury can come back on the fair dealing prong without finding a breach of the contract? Well, first, our case differs from the cases like Goose and others cited by FedEx in that we're not dealing with an at-will relationship. We know from our contract that it can be terminated only for cause and specified elements of cause. So in those cases where you have a defined, expressly stated at-will relationship, the court and jury are not permitted to imply a contrary obligation to that expressed term. We're not dealing with that circumstance here. Well, the renewal – I mean, the district court put together the renewal and the termination clauses, but the renewal clause, as read as contract language, doesn't have any cause requirement. Right. So the two provisions are within an inch of each other. I mean, they follow each other directly on the page. Well, if we just look at that language, then why doesn't Goose apply in that line of cases? Well, because cases that have looked at this, for example, the FedEx versus Metheny court, saw there was no meaningful distinction between termination and non-renewal. Both amount to a termination of the contract. And since there's an express provision that termination can only be for cause, it's reasonable for the parties to have the legitimate expectation that this will automatically renew but for cause. And the evidence – Legitimate expectation under Section 1654 of the Civil Code is a permissible means of interpreting the contract when there is an ambiguity. Right. But first you've got to find that there's an ambiguity. What's the ambiguity in the notice-only provision of the non-renewal clause? Well, the ambiguity is that there is no statement, express statement, that says that it is at will. The statement is simply that there is notice, but it is open. It is an open term as to whether that notice is to specify a cause for termination, such as in the provision for termination. Well, we have a bunch of cases that say that we're in a contract. There is a provision for cause required as to one portion of the termination in this case. And it isn't in the other portion than the parties intended that express unias, right? It be only as to termination and not as to renewal. How do we handle those cases? Well, we're not dealing with apples and oranges in the sense that we're not dealing with a clause that's unrelated to the other clause. We're relating to a combination of clauses. These two clauses deal with the longevity of this relationship. And we know that it's not an at-will relationship because it's expressly provided for that. In the first two years, but not after that. So then we go to, well, that may be FedEx's interpretation. We fully expected that it would convert to an at-will relationship after the initial term. But they didn't say that. So that's their interpretation. Is that more reasonable than someone else who looks at this and says, I'm making a long-term investment here. I'm leasing trucks for five or seven years. I know these other guys are here for a long time. I know that the compensation structure encourages my longevity. It may not be a good business decision to enter upon such a contract. But the question is, what does the contract say? And it seems to me, and tell me where I'm wrong, that the language on termination requiring cause is quite distinct from the language of renewal, which doesn't require cause at all. Well, Bethany found that to be a distinction without a difference. And because they both are, they both tantamount to a termination of the contract. And FedEx's own policies on non-renewal requires good business reason for non-renewal, which is consistent. Are those part of the contract, or does the integration clause, paragraph 13, eliminate them? That integration clause doesn't apply to the documents that were introduced at trial regarding standard practices and procedures, policies of FedEx. The instructions of the terminal manager, they are not to. Why does the policies of FedEx become a term of the contract? They demonstrate the legitimate expectations of the parties. They stop FedEx from now coming here and making a contrary interpretation of their own contract. If Mr. Oprishaw had read the policies of FedEx before entering into the contract, do you think that he would be justified in law relying on them in view of the integration clause? Of FedEx's internal policies? Of the contract. The integration clause says this is the whole contract. No other representations are to be relied upon. Oh, well, I understand the question. I think it's reasonable for Mr. Oprishaw to come to this contract and expect. It may be reasonable in his mind. The question is can he maintain that position under the law? Well, sure. Here's his position. The case says that the integration provision in the contract does not extinguish the expectations of the party before he signed the contract. Well, we have a present or latent ambiguity in this provision because, at best, it does not say that it is non-renewable at will. It doesn't use the word at will. It says non-renewable on 30 days' notice by other parties. Right. But given the context of the – we're not dealing – this is not a contract, as the trial court said. This is not a contract for widgets. This is a relationship. As another court said, it's a brilliantly drafted attempt to have the constraints of an employment relationship in the guise of an independent contractor model. What we have is parties with a long-term view of this relationship with mutual objectives. How are we going to achieve these objectives together? Is it reasonable to expect parties to this contract to view this as a short-term affair? Or is it something that is going to be a long-term affair? Nobody enters into these contracts with the understanding that it's terminable at will after the initial term because of the long-term investments that are necessary to ramp up – to get your trucks and your drivers and to create your business. And it was admitted without objection the guidelines under which FedEx views that same provision. That is persuasive evidence that at least the other side in this case agrees with us, that this non-renewal provision is not to be taken lightly. The jury here, having found that FedEx engaged in bad faith in its dealings with Mr. Openshaw, would be entitled to view that renewal provision to say that but for that bad faith, that FedEx acted in good faith, then this contract likely would have renewed as it has for other contractors. So it's a delicate balance I know that FedEx is trying to achieve with its contract. It's got independent contractors doing the work essentially of employees, and you've got other carriers like UPS that are probably upset about that. And the fact is, though, that they have created a situation where we have, in the words of the Terminal Manager, business partners. She refused to refer to my client as a contractor. She referred to him as a business partner. Now, that is probably describing the joint venture that is engaged here, But it also speaks to the mutual objectives of the parties, the mutual efforts of the parties to cooperate with each other, to work together to achieve mutual success. And what we presented at trial was that FedEx, when it had that opportunity, it took the opposite approach. And it did things to either watch Mr. Openshaw fail or try to encourage him to fail instead of taking steps where they could have helped the situation achieve their mutual objectives. I want to make one more run at GOOS. I understand that GOOS is an employment at will situation that's somewhat different from your situation. But I read GOOS as potentially standing for a broader proposition, which is that the implied duty is simply a breach of the contract. It's a term that's sort of implied in all contracts. But it's still just an aspect of a breach of contract. So what I don't understand is how the jury can come back here and say there's been no breach. We can't agree whether there was a breach of the contract, but you breached the implied duty because the implied duty has to be a part of the contract. So why isn't that an inconsistency in the jury's verdict that really demands a new trial? Right. And maybe the answer is they've waived their claim for a new trial if that was available to them. But first I'd like sort of a square answer as to about GOOS, and then you can answer if you wish about whether they've waived it. Well, I was not required to bring a breach of contract claim. I could have singly and solely pursued a breach of the covenant of good faith claim. And so the hypothetical arguably would never arise where the jury would deadlock on the contract claim and find unanimously on the covenant claim. In California law, they are separate claims. Now, I'll give an example. The drivers are required to rent scanners from FedEx. There's nothing in the contract that says that the scanners have to operate, but that would be implied. And there was plenty of testimony that the scanners didn't operate, that they were constantly breaking down. And there was testimony that when a driver came back with packages and was demerited for these returns, that there was no investigation as to whether the cause was a broken scanner or not. Again, let me make sure I want to frame my question carefully. If FedEx didn't provide you with working scanners, I would be, let's assume that I would also conclude that that is a breach of an implied covenant. But that would make it a breach of the contract. So what I'm trying to figure out is how a jury can come back and say, we don't know whether there was a breach of the contract, but you breached the implied duty. That seems to me to be inconsistent. If you've got a breach of the implied duty, that is a breach of the contract. What am I missing? What you're missing is that in the example that we just discussed regarding the scanners, that's a breach of an obligation that's incorporated in the contract, but it's not expressly stated in the contract. Nowhere in this contract will you find that. I got that. But why wouldn't a jury come back in a case like that and say, if you didn't give us working scanners, that's a breach of the contract. That is a breach of an implied covenant in the contract. Now, maybe that's too obvious of an example. I mean, you know, maybe another example that might be more satisfying is the license arrangements that licensors and licensees have where it doesn't require or expressly state that the licensee is supposed to use his good efforts to generate income for the licensor, but it's implied. So the licensee performs not to the satisfaction of the licensor, but there's nothing in this contract that says I can terminate this relationship, but perhaps the breach of the implied covenant would come into play in that circumstance. And so a jury could deadlock, say, I don't see the four corners of the term here, but I can see how within that term is an implied obligation that you exercise discretion and good faith, and that's what our case dealt with, which was more of a nuance. And it's not a surprise because this is a carefully drafted contract. Every term in this contract was vetted. But, Mr. Wolf, when you say that the implied breach of the covenant of good faith and fair dealing is separate from the contract, what you're really saying is that in certain cases, a violation of the implied covenant gives rise to tort damages, such as in insurance cases when there's a bad faith failure to investigate or in a mortuary case where there's a failure to hand the ashes over of the right person, right? But those are tort damages, and those tort damages are not available to you under goose. This is a contract case. So this isn't really separate. This isn't a separate cause of action. I don't think you've answered Judge Vibey's question. If the implied covenant deals with duties under the contract, isn't a failure to perform the implied covenant a breach of the contract? And, therefore, the special verdict should have read, If your answer is to question one and two, not one or two, fill in the verdict. It had to be a breach of the contract to be a breach of the implied covenant implied into the contract. Did it not? I haven't said that the covenant claim is separate from the contract. I said that it is separate from the contract claim. Those are two separate claims, but they are related, obviously, because we have to find the ‑‑ we're implying an obligation into the contract not to contradict any expressed terms of the contract, but to reasonably relate to that contract. So you're referring to the jury verdict, question number one, deals with the written contract only. That's how you would interpret that jury verdict. Not the written contract as supplemented by the implied covenant. I'm not sure I understand the question. We did have a jury instruction on the ‑‑ and it was a standard instruction on the breach of the implied covenant claim. So you made certain arguments as to why there was a breach of the written contract, what the specific breaches were, and then you made other arguments as to what the specific breaches were of the implied covenant. And so as it went to the jury, the jury looked at one group of claims as to the contract and a different group of claims as to the implied covenant. Is that correct? There was some overlap. I thought that they were different specified breaches. I would agree that there's overlap. I would agree that a jury who finds that there's been a covenant breach could also find that there's been an express contract breach in the sense that we have a proprietary right here. It's been violated. You could argue that's an express provision. I think that when it gets into the nuance side of things, what the jury saw was efforts by FedEx to stymie this operation. Instead of doing what it said it was doing, which was we're all in this together. We're business partners. We're trying to achieve mutual objectives. We're going to cooperate with each other. It viewed the relationship as a straitjacket and looked at words very narrowly in the contract and turned a blind eye when it could have acted more appropriately. And the jury saw plenty of evidence of that. One of the exhibits was an internal email where FedEx is discussing early in this relationship how are we going to terminate this contract so that we can prevent it from being sold. Because if we can prevent it from being sold, we can take it in-house and then we can control this route. That's an item of damage right there. If Mr. Openshaw is duly notified that his contract is going to be terminated, he has a right to mitigate his loss. He has a right to find somebody who will buy it from him. And he was denied that right. And that would be another example where the jury could find either, frankly, an express contract breach or, in this instance, a breach of the covenant. We weren't in the jury room and we don't know what caused the jury to deadlock on the contract claim, but we do know that they were unanimous on the covenant claim. And for our purposes that was, frankly, sufficient. At the end of this, it was a hard-fought fair trial. The arguments were well vetted. Judge Carney was a careful judge. The decisions that he made were sound. And what we have, I think, is just disappointment with the result on the part of FedEx. And the arguments that I've seen here are basically a rehash of closing arguments, which is not enough to cause this Court to overturn a jury verdict. And there was substantial and sound evidence to support that verdict. Thank you. Thank you, Mr. Wolff. Mr. Snyder. Thank you, Your Honor. I have one minute of rebuttal and I'd like to ---- I will allow you another minute or so. We took Mr. Wolff over considerably if the question is required. If not, you can be precise. Thank you. Thank you, Your Honor. I just wanted to address one of Mr. Wolff's arguments, and that deals with the non-renewal provision and whether it required cause. At the end of the day, all of the arguments that the plaintiff made below, the plaintiffs making in this Court, rely upon extrinsic evidence. The expectations of the parties, the guidelines, the internal guidelines that FedEx Ground has with respect to non-renewal, none of which were part of the operating agreement. And as the Court properly noted, this is an integrated agreement. I would also note that the argument flies in the face of the precedent of this Court as well as the precedent of several Court of Appeals cases, most notably this Court's opinion in Apley and the California Court of Appeals decision in Bernard, both of which dealt with a state farm independent contractor agency agreement and found that the phrase, termination upon 30 days notice, was not reasonably susceptible to an interpretation that cause was required. And in both of those cases, the courts rejected the use of extrinsic evidence, specifically the fact that there was an internal contract termination review process, state farm afforded terminated agents, that there was statements in a company newsletter that said that termination would only be for cause. The Court rejected that, saying that all of that is extrinsic evidence and doesn't change the fact that the agreement unambiguously requires only notice. And in our view, that's the beginning and end of the analysis on the damages. And unless there are any other questions, FedEx Ground would rest. Thank you, Mr. Snyder. Thank you, Mr. Wolf. Appreciate the argument. Openshaw v. FedEx Ground Package System is submitted. Complete the oral calendar for the day and for the week. The Court is adjourned.
judges: Bybee, Bea, Ikuta